## SHEPARD *against* PALMER.

To sustain an action for goods sold and delivered, a sale of the goods, by the plaintiff, to the defendant, must be shewn.

Therefore, where it appeared in such action, that the defendant had received goods of the plaintiff, under an authority from him to dispose of them in a particular way, and he had disposed of them contrary to his instructions; it was held, that there was a fatal variance between the declaration and the proof.

To sustain an action for money had and received, it must appear that the defendant has actually received money, or that which is equivalent.

Therefore, where it appeared in such action, that the defendant, having received goods of the plaintiff under an authority from him to dispose of them in a particular way, sold them, and took for them a negotiable promissory note, in a manner not authorized by his instructions, which note remained in his hands unpaid; it was held, that there was a fatal variance between the declaration and the proof.

*Hartford,*
June,
1826.

Shepard
*v.*
Palmer.

Where there is an express contract, open and unrescinded, the remedy of the party is on that alone; he cannot resort to an implied contract.

In an action on a special agreement, the plaintiff must prove that agreement as he has stated it in his declaration.

Therefore, where the plaintiff declared on a promise of the defendant to pay the amount of a certain promissory note, taken for goods sold by him belonging to the plaintiff; and the proof was of a promise to procure a note, get it discounted, and remit the amount, deducting freight; it was held, that the variance was fatal.

So, where the plaintiff declared on a promise of the defendant to obtain a note for the price of certain goods entrusted to him to dispose of, and to deliver it to the plaintiff; and the proof was of a promise to procure a note, get it discounted and remit the amount, deducting freight; it was held that the variance was fatal.

So, where the plaintiff declared on a promise of the defendant to obtain such note, get it discounted, and pay to him the balance of a certain sum, after deducting a certain sum for freight due the defendant; and from the proof it appeared, that the plaintiff was not liable for such freight, it being due from a third person; it was held, that the variance was fatal.

An agent to dispose of goods, is a competent witness for his principal, in an action between the latter and another person, for the avails of the goods.

This was an action of *assumpsit*, in five counts. In the first count, the plaintiff averred, That on the 20th of *November*, 1822, he was the owner of 10,715 barrel staves and heading, which, by his agent *A. Willard*, he sold to *R. & L. Parsons &* Co. for the sum of 160 dollars, 69 cents, and employed the defendant to deliver them; that the defendant did deliver them, and receive payment therefor, by including the amount in a negotiable promissory note, executed by *R. & L. Parsons &* Co., with other sums of money due from them to the defendant, without any authority for that purpose from the plaintiff; that he has neglected and refused to pay over the sum so included, or any part thereof, and to deliver up the note, though especially demanded; and that it has long since become payable. An indebtedness was then averred, and a promise raised.

The second count alleged, That the plaintiff entrusted the defendant with the staves and heading to sell at 15 dollars per thousand, upon a credit of 90 days, at the *Phoenix Bank*, receiving in payment the note of the purchaser payable at that bank; that the defendant sold the staves and heading to *R. & L. Parsons &* Co. for 160 dollars, 69 cents, upon such credit; and that in consideration of the premises, the defendant promised to obtain and receive their note for the purchase money, and to deliver it to the plaintiff, when demanded; which he has always refused to do, but received the amount in a note for a larger

sum, including a debt due to himself therein, and that he has also refused to divide the note, though *R. & L. Parsons & Co.* were willing to give their note for the sum due to the plaintiff.

The third count did not materially vary from the second, otherwise than as it averred, That the defendant promised to get said note discounted, and to pay to the plaintiff the balance of 160 dollars, 69 cents, after deducting the freight due him, the defendant, on the staves and heading, *viz.* 3 dollars *per* thousand.

The fourth count was for goods sold and delivered ; and the fifth for money had and received.

The cause was tried, on the general issue, at *Hartford, September* term, 1824, before *Bristol,* J.

The plaintiff introduced *A. Willard,* as a witness, who gave the following testimony. He contracted with the plaintiff to get 50 thousand staves and heading from timber growing on the plaintiff's land, on *Ewin's* grant, in *Massachusetts,* transport them down the *Connecticut* river, and deliver them to the plaintiff at *Hartford ;* and for these services the plaintiff agreed to pay him at the rate of 13 dollars *per* thousand. *Willard* transported the staves and heading mentioned in the declaration, part of the 50 thousand so contracted for, to *Enfield* in this state, and there sold them, by the plaintiff's direction, to *R. & L. Parsons* & Co., at 15 dollars *per* thousand, at 90 days credit ; and before the commencement of the present suit, the plaintiff paid him at the rate of 13 dollars *per* thousand. The defendant was hired, by *Willard,* to transport the staves and heading in question down the *Connecticut* river to *Hartford,* at the freight of 3 dollars *per* thousand, and to deliver them to *Gaius Lyman,* the plaintiff's agent, at *Hartford,* who was, at the time, fully informed of *Willard's* agency, and of the contract between him and the plaintiff. After *Willard* had sold the staves and heading to *R. & L. Parsons & Co.,* he directed the defendant to deliver them to the vendees at *Enfield,* and receive their note therefor, at 90 days, at the *Phoenix Bank ;* and the defendant agreed to receive such note, procure it discounted at the bank, and forward the balance, after deducting his freight, to *Willard,* as the plaintiff's agent. The defendant accordingly delivered the staves and heading to *R. & L. Parson's & Co. ;* but, without the plaintiff's or *Willard's* consent, he included the price of them in a negotiable promissory note, which he took of them for a debt due from them to himself for rye,

About a month afterwards, *Willard*, not having received the money, as the note had not been discounted, came from *Ewin's* grant to *Enfield*, and agreed with the defendant to go to *R. & L. Parsons* & Co. and divide the note according to their respective interests. He went to them accordingly. They were willing to divide the note; but he refused to do so, unless *Willard* would allow him 3 dollars, 50 cents, *per* thousand for boating; this being 50 cents *per* thousand more than *Willard* had contracted to give him. *Willard* would not allow his claim, but offered to allow him 3 dollars *per* thousand. The defendant then refused to do any thing about the business; and has ever since retained the note in his hands. The defendant, at all times, knew of *Willard's* agency, and of the contract between him and the plaintiff.

The defendant objected to this testimony, claiming that *Willard* was an incompetent witness. The judge overruled the objection, and permitted the testimony to go to the jury. In his charge, he instructed the jury, that if they believed the facts, which *Willard* had stated, to be proved, the plaintiff was entitled to recover; and that the defendant was not entitled to any deduction for the freight that remained due to him from *Willard*. The jury returned a verdict for the plaintiff accordingly; and the defendant moved for a new trial.

*T. S. Williams* and *I. Perkins*, in support of the motion, contended, 1. That the proof did not sustain either of the three first counts in the declaration. The promises stated in the two first counts are different from that proved. The third count states a promise to pay the balance, after deducting the defendant's claim for freight. The proof shews, that *Willard* was to pay the freight; a fact at variance with the promise stated.

2. That the plaintiff cannot abandon the special contract, while it is open and unrescinded, and sue for money had and received. *Cooke* v. *Munstone*, 1 *New Rep.* 351. 355. *Tuttle* v. *Mayo*, 7 *Johns. Rep.* 132. 134. *Vandenheuvel* v. *Storrs*, 3 *Conn. Rep.* 203. 208. *Whiting* v. *Sullivan*, 7 *Mass. Rep.* 107. Besides, if the plaintiff may waive the special contract, still he must shew, that the defendant has received money, or something equivalent. The paper received by the defendant may never be paid. At any rate, it is not money, or an equivalent for money; and was not received as such. *Pickard* v. *Bankes*, 13 *East* 20.

3. That the fourth count cannot be sustained ; as the staves and heading were not *sold* to the defendant.

4. That *Willard* was an incompetent witness. [This point was not pressed.]

*N. Smith* and *Toucey,* contra, after remarking, that the defendant had exceeded his authority and abused his trust, and had, unquestionably, become liable, if there was any way to get at him, contended. 1. That the facts stated in the first and second counts, were substantially proved, by the testimony of *Willard.* [The third and fourth counts were not relied upon.]

2. That the defendant was liable on the general counts. The actual receipt of money, by the defendant, is not necessary. As he disobeyed the instructions of the plaintiff, his principal, he is liable immediately for the money ; and the plaintiff has a right to consider the note, thus taken and held, as money in his hands. *Goodenow* v. *Tyler,* 7 *Mass. Rep.* 36. 45. *Le Guen* v. *Gouverneur & Kemble,* 1 *Johns. Ca.* 437. 461. n.

3. That the defendant had no claim against the *plaintiff* for freight ; it being *Willard's* duty to transport the goods ; and the contract for the transportation of them being made with *Willard* personally. The defendant could have no *lien,* after having parted with the goods.

DAGGETT, J. The fourth count of the declaration, which is for goods sold and delivered, cannot be supported ; for whatever may be proved, by the testimony of *Willard,* on whose testimony the cause was decided, it did not prove, nor tend to prove, a *sale* of the staves and heading, by the plaintiff, to the defendant. Indeed, it is not now urged, that the verdict can be supported on this count.

The fifth count is for money had and received. There is no pretence, that the defendant has received any money. Now, to sustain this count, it must have appeared, that the defendant had actually received money, or that which was equivalent to it. Bank notes circulating as cash, and, according to some decisions in the *English* courts, negotiable paper, may be considered as money for this purpose. A set-off of a debt due by the defendant, may be deemed a receipt of money to that amount. *Ward* v. *Evans,* 2 *Ld. Raym.* 928. But I am not satisfied, that there is any principle or precedent, which will sustain a verdict on this count, when it is so far from being true, that

the defendant has received any money for these staves and heading, that it is not pretended that *R. & L. Parsons* & Co., who purchased them, have paid to the defendant the price agreed on, or any part of the debt due the defendant, which, with the amount of the staves and heading, was included in the note mentioned.

By the third count, it appears, that a deduction was to be made from the plaintiff's demand, of freight; but the court instructed the jury, that under the circumstances, no deduction ought to be made; and this was doubtless correct; for the defendant, according to the testimony, was to be paid his freight by *Willard.* The proof, therefore, did not support this count.

The testimony shews an express promise, on the part of the defendant, to the plaintiff, that he would deliver the staves and heading to *R. & L. Parsons* & Co., receive their note at 90 days at the *Phoenix Bank*, procure it discounted at the bank, and transmit the balance, having deducted the freight, to the agent of the plaintiff. It is very clear, that neither of the promises alleged in the first and second counts, is proved by the testimony, but a different one. Here, then, is a fatal variance. The rule on this point is too familiar, and has been too often recognized, to require discussion or illustration. *Bulkley* & al. 2 *Landon* & al. 2 *Conn. Rep.* 404. A promise to procure a note, cause it to be discounted, and remit the amount, deducting freight, is obviously variant from a promise to pay the whole amount of the note, as alleged in the first count; and equally so from a promise to obtain a note for the price of the staves and heading, and deliver the same to the plaintiff, as averred in the second count. It is, then, not easy to see how this verdict can be supported, on either of the counts in the declaration.

It is also to be observed, that the plaintiff cannot, in this case, resort to an implied contract; for an express contract existed, and is proved. This express contract is neither executed nor rescinded; and the plaintiff, therefore, must resort to it as his remedy. *Vandenheuvel* v. *Storrs,* 3 *Conn. Rep.* 203. and the numerous cases there cited, are authorities full to that point.

If it be said, that the plaintiff may deny the power of *Willard* to bind him, and therefore consider the defendant as having disposed of his property without authority, it is very clear, that he cannot recover on the special contract; for if he affirms the acts of *Willard,* he must affirm them in whole: he cannot abandon part, and confirm the rest.

I would, therefore, grant a new trial.

The motion states an objection to the testimony of *Willard*, on the ground of interest. This was, very properly, abandoned in argument. Doubtless he was a competent witness, acting in the character of agent.

The other Judges were of the same opinion.

New trial to be granted.